**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRADLEY SHACKFORD,          ) | NO. SACV 09-01398 SS |
|                             ) | |
|           Plaintiff,        ) | |
|                             ) | |
|      v.                     ) | **MEMORANDUM DECISION AND ORDER** |
|                             ) | |
| MICHAEL J. ASTRUE,           ) | |
| Commissioner of the Social   ) | |
| Security Administration,     ) | |
|                             ) | |
|           Defendant.        ) | |
| _____ ) | |

**I.**

**INTRODUCTION**

Bradley Shackford ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

\\

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB benefits on January 19, 2005 (Administrative Record ("AR") 49). He alleged a disability onset date of September 21, 2001 (AR 15, 82) due to depression, anxiety, and his HIV positive status. (AR 41). Plaintiff's application was denied initially and upon reconsideration. (AR 31-32, 35-39, 41-45). Plaintiff requested and was granted a hearing before Administrative Law Judge ("ALJ") John L. Geb on October 6, 2006. (AR 19, 33, 27). Plaintiff was represented by counsel and testified on his own behalf. (AR 468). Additionally, Mary Shackford, a witness for Plaintiff testified at the hearing. (AR 467). On March 16, 2007, the ALJ issued a decision denying benefits. (AR 505). Plaintiff then sought review of the ALJ's decision before the Appeals Council. (AR 7). On June 22, 2007, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final (AR 4).

Plaintiff then filed an appeal with this Court, which reversed and remanded the matter for further proceedings due to the ALJ's failure to obtain vocational expert ("VE") testimony during the hearing. (AR 518-27). On January 10, 2009, the Appeals Council vacated the Commissioner's prior decision and remanded the case to the ALJ for further proceedings consisted with the District Court's order. (AR 515-17). ALJ John Kays convened a second hearing on July 20, 2009. (AR 528-55). Plaintiff and Clara Dewyer, a friend and former employer of Plaintiff, testified during the hearing, as did Dr. Malancharuvil, a clinical psychologist, and Alan Boroskin, a VE. (AR 529-30). On

September 16, 2009, the ALJ issued an unfavorable decision. (AR 494-505). Thus, Plaintiff commenced the present action on November 25, 2009. (Memorandum in Support of Defendant's Answer ("Answer Memo") at 2).

## III.
## FACTUAL BACKGROUND

Plaintiff was born on May 14, 1963 and was forty-seven years of age at the time of the hearing. (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo") at 1). He has a high school diploma and completed some college courses. (AR 470). Plaintiff has previous work experience in installing sprinkler systems, landscaping, and managing rental properties. (AR 470, 475). Plaintiff alleges that his disability began on September 21, 2001. (AR 11). Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. (AR 13).

Plaintiff has a history of methamphetamine abuse (See, e.g., AR 365, 413, 440, 533), was arrested for attempting to sell amphetamines and has a DUI conviction. (AR 533). Plaintiff also has some history of psychiatric treatment and psychotherapy for depression. (AR 363, 540). Plaintiff was diagnosed as HIV positive on May 16, 1984. (AR 473).

\\
\\

In response to the previous remand order, instructing the ALJ to take VE testimony in light of the non-physical limitations, (AR 533) the

Agency arranged for a cognitive evaluation of Plaintiff. (AR 1116). Although the results suggested that Plaintiff may be in the "mildly mental[ly] retarded range," Dr. Krieg, who performed the evaluation questioned the validity of the result, stating that Plaintiff was "oppositional to the examiner" and "did not appear to be putting forth his best effort." (AR 1116, 1120). According to Dr. Krieg, "it is conceivable that his performance could be higher." (AR 1121).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

  (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

  (3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

  (4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

  (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of

5

establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 499). At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. (Id.). Next, he found that Plaintiff had the following severe impairments: HIV positive, with depression resulting from this condition, a personality disorder, and intermittent

---

[2] Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a), 416.945(a).

6

substance abuse. (Id.). At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment. (Id.).

At step four, the ALJ found that Plaintiff retains the functional capacity to perform medium work.[3] (AR 500). The ALJ specifically found that Plaintiff could perform moderately complex tasks of 4 to 5 steps in a habituated environment but is precluded from "working around hazardous machinery because of his history of amphetamine abuse." (Id.). The ALJ found that Plaintiff's HIV positive status did not physically prevent him from working because his medical history showed that he had no abnormalities apart from two papular lesions on the right forearm "most likely secondary to flea bites." (AR 501).

In regards to Plaintiff's alleged mental impairments, the ALJ found the Plaintiff's complaints "not entirely credible." (AR 503). The ALJ highlighted that Plaintiff has "consistently misrepresented his substance abuse." (Id.). The ALJ found that Plaintiff's testimony as to his last use of drugs or alcohol was "vague and general, lacking the specificity to make it more convincing." (Id.). His apparent lack of effort at the consultative cognitive examination detracted from his credibility, and his care of an elderly woman suggested to the ALJ that his activities "are not as limited as would be expected." (Id.).

---

[3] Medium work, as defined in 20 C.F.R. 404.1567(c) and 416.967(c), permits lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking with normal breaks for 6 hours out of an 8 hour day, and sitting with normal breaks for 6 hours out of an 8 hour day.

The ALJ credited Dr. Krieg's opinion that if Plaintiff exerted effort, he would be able to understand clear instructions, follow simple directions, complete tasks, and maintain regular attendance in the workplace. (AR 502). The ALJ also gave great weight to the opinion of Dr. Malancharuvil, a medical expert, because the doctor had the opportunity to review the entire record and heard the testimony of Plaintiff at the hearing. (AR 503). The ALJ found the marked limitations in areas of key mental functioning found by Dr. Luce, plaintiff's treating physician, were unsupported and inconsistent with the record. (AR 502). Further, the ALJ found the Dr. Luce ignored or placed minimal emphasis on the impact of Plaintiff's drug use on his mental functioning, and therefore gave Dr. Luce's statement less weight. (Id.).

Finally, at step five, the ALJ concluded that, Plaintiff could not perform his past relevant work. (AR 503). However, based on Plaintiff's RFC, the testimony of the VE, Plaintiff's status as a "younger individual," education, and work experience; Plaintiff could perform work as a laundry worker, kitchen helper, packager, and inspector. (AR 504). Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision. (AR 505).

\\
\\

## VI.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21.

## VII.
## DISCUSSION

Plaintiff contends the ALJ erred for a number of reasons. First, he claims that the ALJ erred in failing to fully and fairly develop the record. (Complaint Memo at 2). Second, Plaintiff contends that the ALJ improperly rejected the opinions of Plaintiff's treating physician, Dr. Luce, concerning Plaintiff's metal capabilities. (Complaint Memo at 4). Finally, Plaintiff contends that the ALJ erred in failing to discuss the

9

findings of Ms. Poulalion, a family therapist. (Complaint Memo at 7). For the reasons discussed below, the Court disagrees with all of Plaintiff's contentions.

**A.    The ALJ Fully And Fairly Developed The Record**

Plaintiff contends that ALJ failed to fully and fairly develop the record by not ordering an updated psychological examination "as recommended by the medical expert," Dr. Malancharuvil. (Complaint Memo at 2). This Court disagrees.

The ALJ has an independent duty to develop the record, even when the claimant is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1288); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). However, it is the plaintiff's duty to prove that she is disabled. Mayes v. Massanari, 276 F2d 453, 458 (9th Cir. 2001)(citing 42 U.S.C. § 423(d)(5)(Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990). As noted in Mayes, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459 (citing Tonapetyan, 242 F.3d at 1150). Here, the ALJ's duty was not triggered, because the record was not ambiguous or inadequate.
\\

Following remand, the agency arranged for a consultative examination of Plaintiff. Although Plaintiff appeared at the consultative examination, he refused to fully cooperate. During the

hearing the medical expert, Dr. Malancharuvil, said that he was not able to determine Plaintiff's true level of cognitive impairment based off of the cognitive examination because Plaintiff was uncooperative with Dr. Krieg, who performed the consultative cognitive examination. (AR 542). Dr. Malancharuvil then stated that "my recommendation to [Plaintiff] is [that] he goes to a psychologist and cooperates fully and gets [] testing of []his cognitive functions." (AR 542). Dr. Kreig had previously stated that "if he is not putting forth his best effort, it is conceivable that his performance could be higher," and noted that Plaintiff was "oppositional with the examiner" and only "minimally to moderately cooperative." (AR 1116, 1121). Dr. Malancharuvil concurred with Dr. Krieg's findings that the test was not valid and stated that "as the record stands now" his opinion is that Plaintiff is capable of performing "moderately complex tasks in a habituated setting." (AR 532-33). Dr. Malancharuvil states that there is "an outside opinion of what is subjectively verifiable here" and that based on the record, he "can't change his opinion." (AR 542).

Not only was any potential ambiguity in the record caused by Plaintiff's own failure to comply with the consultative examiner, but there was no actual ambiguity of the kind that would require further development of the record. The Agency had ordered physical and cognitive examinations. (AR 1112, 1116). The ALJ had both a medical expert and a VE both testify at the hearing. (AR 529). Dr. Malancharuvil's statement that Plaintiff should obtain another cognitive assessment was a recommendation to Plaintiff, not to the ALJ. (AR 542) ("[M]y recommendation <u>to him</u> is that . . . .") (emphasis added). Thus, this statement does not indicate that Dr. Malancharuvil found the record

11

incomplete, but rather that Plaintiff would need a valid test showing cognitive impairment in order to "change [his] opinion." (AR 542-43).

The Court notes that Plaintiff's failure to cooperate may be held against him in the disability determination. Social Security regulations state that if a claimant does not have a "good reason" for failing or refusing to take part in consultative examinations or tests arranged by the ALJ, or fails to cooperate with the process, then the ALJ may make a negative disability determination based solely on this failure to take part. 20 C.F.R. § 404.1594(e)(2); 20 C.F.R. § 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled."); see also Kreidler v. Barnhart, 385 F. Supp. 2d 1034, 1037 (C.D. Cal. 2005) (failure to attend an examination is equivalent to a failure to cooperate, which is sufficient to warrant termination of disability benefits). The ALJ must consider the claimant's physical, mental, educational and linguistic limitations in determining whether the claimant had a good reason for failing to cooperate with a consultative examination. 20 C.F.R. §§ 404.1518(a); 416.918(a). See Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992). However, in the absence of a good excuse for non-cooperation, the claimant may be disqualified. 20 C.F.R. § 404.1594(e)(2). Although the nondisability determination discussed above usually follows a claimant's complete failure to attend an examination, the underlying rationale is applicable here -- i.e., a claimant should not be entitled to further examination

if he fails to fully cooperate in the first examination. At a minimum, Plaintiff has a duty to fully cooperate with consultative examinations.

Based on Dr. Malanchrauvil's testimony and the remainder of the record, the ALJ correctly decided that the record was not incomplete or ambiguous. Thus, there was no duty to further develop the record.

**B.     The ALJ Properly Rejected The Treating Physician's Opinion**

Plaintiff also contends that the ALJ erroneously rejected the opinion of the treating physician. (Complaint Memo at 4). Specifically, Plaintiff claims that the ALJ erred in failing to recontact Dr. Luce, Plaintiff's treating physician, for clarification of her assessment and for failing to provide specific and legitimate reasons for rejecting Dr. Luce's opinion. (Id. at 6-7). This Court disagrees.

As a general rule, more weight is usually afforded to the opinion of a treating physician than to doctors who do not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). However, such deference is not absolute and may be discounted where it is not supported by objective evidence. Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999). When the treating physician's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion by providing "'specific and legitimate reasons' which are supported by substantial evidence in the record." Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). A consultative medical examiner's findings can constitute

13

substantial evidence if it rests on independent clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Furthermore, "[t]he ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Plaintiff's treating physician, Dr. Luce, performed a mental status examination on Plaintiff and found Plaintiff had marked limitations in "key areas of mental function" and "poor ability to complete most activities." (AR 502, 1120). The ALJ rejected this opinion because "there is nothing in the clinical progress notes to support the presence of a mental impairment to the degree reported by Dr. Luce." (AR 502). A lack of objective evidence is a specific and legitimate reason to reject a treating doctor's opinion. Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989). Dr. Luce's opinion was contradicted by that of Dr. Krieg and Dr. Malancharuvil, who both found that Plaintiff could perform moderately complicated tasks. (AR 532). Dr. Krieg and Dr. Malancharuvil's formed their opinions based on independent, objective clinical findings. (See AR 1116-20). Dr. Krieg and Dr. Malancharuvil's opinions qualify specific and legitimate reasons supported by the record for rejecting Dr. Luce's opinion. The reports of consultative physicians may serve as substantial evidence if they are supported by other evidence in the record. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

As stated previously, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes,

14

276 F.3d at 459. The ALJ's finding that Dr. Luce's opinion was unsupported did not suggest that the record was ambiguous or inadequate as there was sufficient evidence in the record to allow for a proper evaluation of Plaintiff's limitations. Indeed, the ALJ sought the assistance of Dr. Lunianski, a medical expert, to review the medical records and to provide an assessment of Plaintiff's limitations. (AR 502). Dr. Lunianski found the record complete and found that Dr. Luce's opinion was inconsistent with the rest of the record and unsupported by objective findings. (AR 455). Thus, we cannot find that the ALJ erred in failing to recontact Dr. Luce to obtain clarification.

Here, the ALJ properly resolved the conflict between Dr. Luce and the other medical experts and found Dr. Luce's opinion should be given less weight. Because the ALJ had specific and legitimate reasons for rejecting Dr. Luce's opinion, he did not err by giving it less weight. See Tonapetyan, 242 F.3d at 1149. No remand is required.

**C.  The ALJ Did Not Err In Failing To Discuss The Opinion Of Ms. Poulalion**

Plaintiff also contends that the ALJ improperly ignored the mental assessment of Ms. Poulalion, a non-physician Family Therapist. (Complaint Memo at 7). Plaintiff claims Ms. Poulalion's findings substantiate the memory and concentration problems claimed by Plaintiff, and therefore, by failing to discuss her findings, the ALJ committed reversible error. (Id.). This Court disagrees.

15

An ALJ "need not discuss all evidence presented," but rather must explain why significant probative evidence has been rejected. <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Under Social Security regulations, a therapist is not an acceptable medical source, 20 C.F.R. § 404.1513(a); however, an ALJ must consider such evidence, at a minimum, as qualified evidence or lay testimony. 20 C.F.R. § 416.913(d)(3); <u>see also</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 970-1 (9th Cir. 1996). Therefore, although the opinions of non-physician "other medical sources" such as therapists, cannot be used to establish the existence of a condition, they may be relevant to the severity of the condition. <u>See</u> 20 C.F.R. § 416.913(d)(1). The ALJ may discount the testimony of non-physician witnesses only if he gives "reasons that are germane to each witness." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 885 (9th Cir. 2006). If the ALJ's ultimate credibility determination and reasoning are adequately supported by substantial evidence in the record, no remand is required. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Ms. Poulalion, a Marriage and Family therapist that Plaintiff saw in connection with his HIV status, noted in an "Initial Psychosocial Assessment" that Plaintiff's "[t]houghts are slow and pressured" and that he exhibited "poor memory, [and] poor concentration." (AR 1049).

However, this initial assessment consists almost entirely of Plaintiff's subjective reporting, as is noted at the top of the assessment with the instructions that the therapist "us[e] ct's own words." (AR 1047). Additionally, this assessment is primarily concerned with the gathering of background information about Plaintiff, such as his family history, social support, religious beliefs, and past psychiatric history. (AR 1047-49). These factors indicate the low probative value of this assessment. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Furthermore, even if the ALJ did err by not providing specific reasons for rejecting Ms. Poulalion's statements, any error was harmless. The opinions of Dr. Krieg and Dr. Malancharuvil rest on independent, objective clinical findings, and contradict the statements made by Ms. Poulalion. (See AR 1116-20). Therefore these opinions would provide substantial evidence for rejecting Ms. Poulalion's opinion. Tonapetyan, 242 F.3d at 1149). Because the ALJ previously found Plaintiff not credible based on his long history of drug abuse, (AR 503) the ALJ could have properly rejected Ms. Poulalion's assessments because she based her assessments entirely on Plaintiff's subjective complaints. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (having discounted plaintiff's credibility, ALJ properly discredited treating physician's opinion based on plaintiff's subjective symptoms).

Therefore, the ALJ did not error in failing to discuss the opinion of Ms. Poulalion because it was not "probative evidence." Vincent, 739 F.2d at 1394-95. However, even if her opinion were probative, the ALJ could have properly rejected Ms. Poulalion's observations for being against the weight of the record, in contradiction to objective findings

by medical experts, and for being based on Plaintiff's subjectively reported symptoms. Based on these reasons, it is highly unlikely that a "reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885. Therefore, the ALJ's ultimate credibility determination and reasoning are adequately supported by substantial evidence in the record, and no remand is required for any error in failure to discuss Ms. Poulalion's findings.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

**VIII.**
**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 6, 2010.

                                                          /S/  
                                                          SUZANNE H. SEGAL  
                                                          UNITED STATES MAGISTRATE JUDGE

---

[4] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."